1:20:57 p.m. 06-30-2006　　5807232653　　　　Seven Clans Casino　　　　　　　　　　☒001

# LEASE AGREEMENT

# XEROX.

**Full Legal Name**
Customer Name (Bill to): 7-CLANS CASINO
DBA/Name Overflow:
Street Address: 7500 HWY 177
Box#/Routing:
City, State: RED ROCK, OK
Zip Code: 74651-0386
Tax ID#: 73-1591489
Customer Name (Install): OTOE MISSOURIA TRIBE
DBA/Name Overflow (if req'd): SEVEN CLANS CASINO
Installed at Street Address: 7500 HWY 177
Floor/Room/Routing:
City, State: RED ROCK, OK
Zip Code: 74651-0386
County Installed in: Noble
Customer Requested Install Date: 06/29/2006

**Check all that apply**
☐ Assoc./Coop. Name: _____
☐ Negotiated Contract #: _____　☐ GSA Contract #: _____
☐ Value Added Services:
☐ Attached Customer P.O. #: _____ Supplies: _____
　Lease: _____
☐ State or Local Government Customer
　Int. Rate: %　Total Int. Payable: $
☐ Replacement/Modification of Prior Xerox Agreement
Agreement covering Xerox Equipment Serial# (or 95#):
is hereby ☐ modified ☐ replaced　Effective Date:
Comments:
**Lease Information**　Lease Term: 60 months
☒ Supplies included in Base/Print Charges
☐ Refin. of Prior Agrmt.: ☐ Xerox (95#: _____　☐ 3rd Party Eq.
Amt Refin $ _____ Int. Rate: %　Total Int. Payable: $

## Lease Payment Information

| Product (with serial number, if in place equipment) | Purchase Option | Down Payment | Prev Install | Fin'l Interest |
|---|---|---|---|---|
| WCP265HC WCP265 PT/SCN/UCF | SFMV | $ | | |
| U260ADVEN 1CONYSTAP1, DNWKACCTNG | | $ | | |
| UPCSCANSF | | $ | | |
| Customer Ed | | $ | | |
| Analyst Services | | $ | | |
| $ 939.03 MINIMUM LEASE PAYMENT (excl. of applic. taxes) | | | | |

Min. Lease Payment Freq. (periodic, excluding annual index charges):
☐ Monthly　☐ Quarterly
☒ Semi-Annual　☐ Annual
☐ Other

Min. Lease Payment Made:
☐ Advance　☐ Arrears

## Price Information

| Periodic Base Charge | $ 939.03 |
| Print Charge Meter 1: | |
| Prints | + $ 0.0079 |
| Prints | $ |
| Prints | $ |
| Print Charge Meter 2: | |
| Prints | $ |
| Prints | $ |
Periodic Min.# of Prints (based on Meter 1 Print Charges)

☐ Adjustment Period
Period A - Mos. Affected:
Periodic Base Charge $
Print Charge Meter 1:
Prints $
Prints $
Prints $
Print Charge Meter 2:
Prints $
Prints $
Periodic Min.# of Prints (based on Meter 1 Print Charges)

Period B - Mos. Affected:
Periodic Base Charge $
Print Charge Meter 1:
Prints $
Prints $
Prints $
Print Charge Meter 2:
Prints $
Prints $
Periodic Min.# of Prints (based on Meter 1 Print Charges)

☐ **Purchased Supplies**　☐ Cash ☐ Fin'd

| Reorder # | Qty | Description | Price |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |
| | | Total Price = | $ |

☐ **Application Software**

| Software Title | Initial License Fee | Annual Renewal Fee |
|---|---|---|
| | ☐ Cash ☐ Finance | ☐ Support Only |
| | $ | $ |
| | $ | $ |
| | Total Initial License Fees = $ | |

☒ **Trade-In Allowance**

| Manufacturer | Model/Serial # | Final Principal Payment | Allowance |
|---|---|---|---|
| XEROX | MTB005747 | $ | $ 13,418.00 |
| | Total Allowance = | | $ 13,418.00 |
| Total Allowance Applied to: ☒ Trade-In Equip. Balance | | | $ 13,418.00 |
| ☐ Price of Replacement Equip. | | | |

☐ K-16 Billing Suspension
(check 1 as required)
Months affected:
☐ June only
☐ July only
☐ August only
☐ June - July
☐ July - August

**Additional Options** (check all that apply)
☐ Run Length Plan　☐ Fixed Price Plan
☐ Per-Foot Pricing
☐ Extended Service Hours:
Description: _____ / $ _____ 0 mo.
☒ Attached Addenda: S1860-1(1)
☐ Other Addenda:

Agreement Presented By:
Xerox Name: Sissic Jones　Phone: (405)748-4233
**FOR AUTHORIZED HQ INTERNAL USE ONLY:**
Accepted:
By: _[signature]_　Xerox Corporation
　(Signature of Authorized Signer)
Title: _____　Date: _____
Worksheet: D15130　Unit: 1　 6/30/2006 17:07:03

www.xerox.com

**CUSTOMER ACKNOWLEDGES RECEIPT OF THE TERMS OF THIS AGREEMENT (CONSISTING OF 7 PAGES INCLUDING THIS FACE PAGE)**
Auth. Signer Name: Michael Harwell
　(Please Print Name of Authorized Signer)
Signature: X _[signature]_ CMH　Date: 6-30-06
　(Signature of Authorized Signer)
Auth. Signer Title: Board Chairman　Phone: (580)723-4466
E-Mail: mharwell@omtribe.org
☐ Tax Exempt (*Must attach Sales Tax Exemption Certificate*)

Xerox Form# 51860 (05/2005)　　　6/30/2006

**EXHIBIT 2**

Dockets.Justia.com

# LEASE AGREEMENT (ADDITIONAL PRODUCTS)

# XEROX.

Full Legal Name
Customer Name (Bill to): 7-CLANS CASINO
DBA/Name Overflow
Date of Customer Signature on Attached Agreement

Customer Name (Install): OTOE MISSOURIA TRIBE
DBA/Name Overflow (if req'd): SEVEN CLANS CASINO
Installed at Street Address: 7300 HWY 177
Floor/Room/Routing
City, State: RED ROCK, OK
Zip Code: 74651-0386
County Installed In: Noble
Customer Requested Install Date 06/29/2006

Check all that apply
☐ Attached Customer P.O. #:   Supplies: _____
   Lease: _____
☐ State or Local Government Customer
   Int. Rate %: _____   Total Int. Payable: $ _____
☐ Replacement/Modification of Prior Xerox Agreement
   Agreement covering Xerox Equipment Serial# (or 95#): _____
   is hereby ☐ modified  ☐ replaced   Effective Date: _____
   Comments: _____

Lease Information
Lease Term: 60 months
☒ Supplies included in Base/Print Charges
☐ Refin. of Prior Agrmt. ☐ Xerox (95#) _____   ☐ 3rd Party Eq.
Amt Refin: $ _____   Int Rate: % _____   Total Int Payable: $ _____

## Lease Payment Information

| Product (with serial number, if in place equipment) | Purchase Option | Down Payment | New Install | Fin'l Interm | |
|---|---|---|---|---|---|
| WCP265HC WCP265 PTR/SCN/HCF | SPMV | | ☐ | ☐ | |
| 1208ADVFNS 1CONVSTAPL 1WWKACCTNG | $ | | ☐ | ☐ | |
| Customer Ed | $ | | ☐ | ☐ | |
| Analyst Services | $ | | ☐ | ☐ | |
| | $ | | ☐ | ☐ | |

Min. Lease Payment Freq. (periodic, excluding excess meter charges)
☐ Monthly   ☐ Quarterly
☐ Semi-Annual ☐ Annual
☐ Other

$ 907.84 : MINIMUM LEASE PAYMENT (excl. of applic. taxes)

Min. Lease Payment Mode
☐ Advance   ☐ Arrears

### Price Information

| | | | ☐ Adjustment Period | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | Period A - Mos. Affected: | | | Period B - Mos. Affected: | | |
| Periodic Base Charge | $ | 907.84 | Periodic Base Charge | $ | | Periodic Base Charge | $ | |
| Print Charge Meter 1: | | | Print Charge Meter 1: | | | Print Charge Meter 1: | | |
| Prints | 1 - | + $ 0.0779 | Prints | 1 - | $ | Prints | 1 | $ |
| Prints | - | $ | Prints | - | $ | Prints | - | $ |
| Prints | - | $ | Prints | - | $ | Prints | - | $ |
| Print Charge Meter 2: | | | Print Charge Meter 2: | | | Print Charge Meter 2: | | |
| Prints | 1 - | $ | Prints | 1 - | $ | Prints | 1 - | $ |
| Prints | - | $ | Prints | - | $ | Prints | - | $ |

Periodic Min.# of Prints
(based on Meter 1 Print Charges)

Periodic Min.# of Prints
(based on Meter 1 Print Charges)

Periodic Min.# of Prints
(based on Meter 1 Print Charges)

☐ Purchased Supplies   ☐ Cash ☐ Fin'd

| Reorder # | Qty | Description | Price |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |
| | | Total Price = | $ |

☐ Application Software

| Software Title | Initial License Fee | Annual Renewal Fee |
|---|---|---|
| | ☐ Cash ☐ Finance | ☐ Support Only |
| | $ | $ |
| | $ | $ |
| | $ | $ |
| Total Initial License Fees = | $ | |

☐ Trade-In Allowance

| Manufacturer | Model Serial # | Final Principal Payment #: | Allowance |
|---|---|---|---|
| Balance Terminated | MTB005747 | | $ |
| | | | $ |
| | | | $ |
| | Total Allowance = | | $ |

Total Allowance Applied to:
☐ Trade-in Equip. Balance: $
☐ Price of Replcmnt. Equip.: $

☐ K-16 Billing Suspension
(check 1 as required)
Months affected
☐ June only
☐ July only
☐ August only
☐ June - July
☐ July - August

Additional Options (check all that apply)
☐ Run Length Plan   ☐ Fixed Price Plan
☐ Per-Foot Pricing
☐ Extended Service Hours:
   Description: _____ / $ _____ /1 mo.
☐ Attached Addenda: _____

FOR AUTHORIZED HQ INTERNAL USE ONLY:
Worksheet: D.5.750   Unit: 3              6/30/2006 13:07:04

www.xerox.com

GENERAL TERMS: The following terms apply to all lease transactions:

1. PRODUCTS. The term "Products" shall refer collectively to all equipment (the "Equipment"), software, and supplies ordered under this Agreement. You represent that the Products are being ordered for your own business use (rather than resale) and that they will not be used for personal, household or family purposes.

2. NON-CANCELABLE LEASE. THIS AGREEMENT IS A LEASE AND IT CANNOT BE CANCELED OR TERMINATED EXCEPT AS EXPRESSLY PROVIDED HEREIN, AND YOUR OBLIGATION TO MAKE ALL PAYMENTS DUE OR TO BECOME DUE SHALL BE ABSOLUTE AND UNCONDITIONAL AND SHALL NOT BE SUBJECT TO ANY DELAY, REDUCTION, SET-OFF, DEFENSE, COUNTERCLAIM OR RECOUPMENT FOR ANY REASON WHATSOEVER, IRRESPECTIVE OF XEROX'S PERFORMANCE OF ITS OBLIGATIONS HEREUNDER. ANY CLAIM AGAINST XEROX MAY BE ASSERTED SOLELY AGAINST XEROX IN A SEPARATE ACTION.

3. LEASE COMMENCEMENT, PAYMENT, TAXES & CREDIT HISTORY.

A. The lease term for this Agreement shall commence upon installation of the Equipment; provided, however, for customer-installable Equipment, the lease term for this Agreement shall commence upon delivery of the Equipment.

B. Invoices are payable upon receipt and you agree to pay Xerox each Minimum Lease Payment, all Print Charges and all other sums due as follows: (i) if the invoice displays a due date, payment is due and must be received by Xerox on or before said due date, or (ii) if the invoice does not display a due date, payment is due and must be received by Xerox no later than thirty (30) days after the invoice date. Restrictive covenants on instruments or documents submitted for or with payments you send to Xerox will not reduce your obligations.

C. You shall be responsible for any and all applicable Taxes, which will be included in Xerox's Invoice unless you provide proof of your tax exempt status. "Taxes" shall mean any tax, assessment or charge imposed or collected by any governmental entity or any political subdivision thereof, however designated or levied, imposed on this Agreement or the amounts payable to Xerox by you for the billing of Products, Print Charges, services and maintenance of any kind; Taxes include, but are not limited to, sales and use, rental, excise, gross receipts and occupational or privilege taxes, plus any interest and/or penalty thereon, but excluding any personal property taxes and taxes on Xerox's net income. If a taxing authority determines that Xerox did not collect all applicable Taxes, you shall remain liable to Xerox for such additional Taxes.

D. You, to the extent required by applicable law, authorize Xerox (or its agent) to obtain credit reports, make such other credit inquiries as Xerox may deem necessary at any time, furnish payment history information to credit reporting agencies, and release to prospective assignees of this Agreement or any rights hereunder credit-related information Xerox has about you and this Agreement. Even if Products have been delivered, Xerox may, within sixty (60) days following its acceptance of this Agreement, revoke the Agreement if your credit approval is denied.

4. BASIC SERVICES. As a mandatory part of a lease, Xerox (or a designated servicer) will provide the following Basic Services under this Agreement (unless you are acquiring Equipment for which Xerox does not offer Basic Services; such Equipment to be designated as "No Svc."):

A. REPAIRS & PARTS. Xerox will make repairs and adjustments necessary to keep Equipment in good working order (including such repairs or adjustments required during initial installation). Parts required for repair may be new, reprocessed, or recovered.

B. HOURS & EXCLUSIONS. Unless otherwise stated, Basic Services will be provided during Xerox's standard working hours (excluding Xerox-recognized holidays) in areas within the United States, its territories, and possessions open for repair service for the Equipment at issue. You agree to give Xerox reasonable access to the Equipment. Basic Services shall cover repairs and adjustments required as a result of normal wear and tear or defects in materials or workmanship (and shall exclude repairs or adjustments Xerox determines to relate to or be affected by the use of options, accessories, or other connected products not serviced by Xerox, as well as any non-Xerox alterations, relocation, service, supplies, or consumables). You agree to use Equipment in accordance with, and to perform all operator maintenance procedures for Equipment as set forth in, the applicable manuals provided by Xerox.

C. INSTALLATION SITE & METER READINGS. The Equipment installation site must conform to Xerox's published requirements throughout the term of this Agreement. If applicable, you agree to provide meter readings in the manner prescribed by Xerox. If you do not provide Xerox with meter readings as required, Xerox may estimate them and bill you accordingly.

Xerox Form# 51860t&c (05/2005)

D. EQUIPMENT REPLACEMENT. If Xerox is unable to maintain the Equipment as described above, Xerox will, as your exclusive remedy for Xerox's failure to provide Basic Services, replace the Equipment with an identical product or, at Xerox's option, another product of equal or greater capabilities. If a replacement product is provided pursuant to this Section, there will not be an additional charge for the replacement product and, except as set forth in the section of this Agreement titled "MAINTENANCE COMPONENT PRICE INCREASES", there will not be an additional charge for Basic Services during the then-current term during which Basic Services are being provided.

E. CARTRIDGE PRODUCTS. If Xerox is providing Basic Services for Equipment utilizing cartridges designated by Xerox as customer replaceable units, including copy/print cartridges and xerographic modules or fuser modules ("Cartridges"), you agree to use only unmodified Cartridges purchased directly from Xerox or its authorized resellers in the United States and the failure to use such Cartridges shall void any warranty applicable to such Equipment.

F. PC/WORKSTATION REQUIREMENTS. In order to receive Basic Services and/or Software Support for Equipment requiring connection to a PC or workstation, you must utilize a PC or workstation that either (1) has been provided by Xerox or (2) meets Xerox's published specifications.

G. DELIVERY AND REMOVAL. Xerox will be responsible for all standard delivery and removal charges. You will be responsible for any non-standard delivery or removal charges incurred.

5. WARRANTY DISCLAIMER & WAIVERS. XEROX DISCLAIMS, AND YOU WAIVE, THE IMPLIED WARRANTIES OF NON-INFRINGEMENT AND FITNESS FOR A PARTICULAR PURPOSE. The parties intend this Agreement to be a "finance lease" under Article 2A of the Uniform Commercial Code. Except to the extent expressly provided, herein and to the extent permitted by applicable law, you waive all rights and remedies conferred upon a lessee by said Article.

6. INTELLECTUAL PROPERTY INDEMNITY. Xerox, at its expense, will defend you from, and pay any settlement agreed to by Xerox or any final judgment for, any claim that a Xerox-brand Product infringes a third party's U.S. intellectual property rights, provided you promptly notify Xerox of the alleged infringement and permit Xerox to direct the defense. Xerox is not responsible for any non-Xerox litigation expenses or settlements unless it preapproves them in writing. To avoid infringement, Xerox may modify or substitute an equivalent Xerox-brand Product, refund the price paid for the Xerox-brand Product (less the reasonable rental value for the period it was available to you), or obtain any necessary licenses. Xerox is not liable for any infringement-related liabilities outside the scope of this Section including, but not limited to, infringement based upon a Xerox-brand Product being modified to your specifications or being used or sold with products not provided by Xerox.

7. LIMITATION OF LIABILITY. Xerox shall not be liable to you for any direct damages in excess of $10,000 or the amounts paid hereunder, whichever is greater, and neither party shall be liable to the other for any special, indirect, incidental, consequential or punitive damages arising out of or relating to this Agreement, whether the claim alleges tortious conduct (including negligence) or any other legal theory. The above-stated limitation of liability shall not be applicable to any specific indemnification obligations set forth in this Agreement. Any action you take against Xerox must be commenced within two (2) years after the event that caused it.

8. ASSIGNMENT.

A. If you wish to assign any rights or obligations under this Agreement, you shall provide a written notice to Xerox of such request for consent, with said notice including the name of the proposed assignee. Your request to assign this Agreement will be granted by Xerox if: (1) you are not in default under this Agreement or any other agreement with Xerox; (2) the proposed assignee agrees to the section of this Agreement titled "LEASE COMMENCEMENT, PAYMENT, TAXES & CREDIT HISTORY" as applicable to it, for the purposes of the proposed assignment; (3) the proposed assignee meets Xerox's then current credit criteria for similar transactions as determined by Xerox in its sole discretion; and, (4) you and the proposed assignee execute a writing, in a form acceptable to Xerox, confirming said assignment. Assignment by you requires the written consent of Xerox and may not be accomplished by operation of law.

B. Xerox may assign this Agreement, in whole or in part, to a parent, subsidiary or affiliate of Xerox, or to a person, or entity for the purposes of securitizing a pool of assets or as part of a third party financial transaction without prior notice to you; provided, however, any proposed assignment to a person or entity not identified previously in this sentence shall require your prior written consent. In the event of an assignment permitted by the preceding sentence, Xerox, without notice to you,

may release information it has about you related to this Agreement. Each successive assignee of Xerox shall have all of the rights but none of the obligations of Xerox hereunder. You shall continue to look to Xerox for performance of Xerox's obligations, including the provision of Basic Services, and you hereby waive and release any assignees of Xerox from any such claim relating to or arising from the performance of Xerox's obligations hereunder. You shall not assert any defense, counterclaim or setoff that you may have or claim against Xerox against any assignees of Xerox. In the event of an assignment by Xerox, you shall remit payments due in accordance with remittance instructions of the assignee.

9. MINIMUM LEASE PAYMENTS. Each Minimum Lease Payment (which may be billed on more than one invoice) includes a Periodic Base Charge, and may include a Periodic Minimum Number of Prints. The Minimum Lease Payments, along with any additional Print Charges for prints made in excess of the Minimum Number of Prints, cover your cost for the use of the Equipment and its maintenance (provided as Basic Services).

10. MAINTENANCE COMPONENT PRICE INCREASES. Xerox may annually increase that amount of the Minimum Lease Payment and Print Charges you are charged for maintenance of the Equipment (the "Maintenance Component"), each such increase not to exceed 10%. (For state and local government customers, this adjustment shall take place at the commencement of each of your annual contract cycles.)

11. TITLE, RISK & RELOCATION. Title to the Equipment shall remain with Xerox until you exercise your option to purchase it. Until you exercise your option to purchase the Equipment, you agree that: (a) it shall remain personal property; (b) you will not attach any of it as a fixture to any real estate; (c) you will not pledge, sub-lease or part with possession of it or file or permit to be filed any lien against it; and, (d) you will not make any permanent alterations to it. The risk of loss due to your fault or negligence, as well as theft, fire or disappearance, shall pass to you upon shipment from a Xerox controlled facility. The risk of loss due to all other causes shall remain with Xerox unless and until you exercise your option to purchase the Equipment. Until title passes to you, all Equipment relocations must be arranged (or approved in advance) by Xerox and shall be at your expense. While Equipment is being relocated, you are responsible for all payments required to Xerox under this Agreement. Equipment cannot be relocated outside of the United States, its territories or possessions until you have exercised the Purchase Option indicated in this Agreement. If you acquire title to the Equipment, you must comply with all applicable laws and regulations regarding the export of any commodity, technology and/or software. All parts/materials replaced, including as part of an upgrade, will become Xerox's property.

12. DEFAULT & REMEDIES; LATE CHARGES & COLLECTION COSTS.

A. For any payment not received by Xerox within ten (10) days of the due date as set forth herein, Xerox may charge, and you agree to pay, a late charge equal to the higher of five percent (5%) of the amount due or $25 (not to exceed the maximum amount permitted by law) as reasonable collection costs.

B. You will be in default under this Agreement if (1) Xerox does not receive any payment within fifteen (15) days after the date it is due or (2) if you breach any other obligation hereunder. If you default, Xerox, in addition to its other remedies (including the cessation of Basic Services), may require immediate payment, as liquidated damages for loss of bargain and not as a penalty, of: (a) all amounts then due, plus interest on all amounts due from the due date until paid at the rate of one and one-half percent (1.5%) per month (not to exceed the maximum amount permitted by law); (b) the remaining Minimum Lease Payments in the Agreement's term less any unearned finance, maintenance, and supply charges (as reflected on the lessor's books and records); (c) a reasonable disengagement fee calculated by Xerox that will not exceed fifteen percent (15%) of the amount in (b) above (said amount is available from Xerox upon request); and (d) all applicable Taxes. You also shall either (1) make the Equipment available for removal by Xerox when requested to do so by Xerox and, at the time of removal, the Equipment shall be in the same condition as when delivered (reasonable wear and tear excepted), together with any related software, or (2) purchase the Equipment "AS IS, WHERE IS" and WITHOUT ANY WARRANTY AS TO CONDITION OR VALUE by paying Xerox the Purchase Option and all applicable Taxes. Xerox's decision to waive or forgive a particular default shall not prevent Xerox from declaring any other default. In addition, if you default under this Agreement, you agree to pay all of the costs Xerox incurs to enforce its rights against you, including reasonable attorneys' fees and actual costs.

13. CARTRIDGES. Cartridges packed with Equipment and replacement Cartridges may be new, remanufactured or reprocessed. Remanufactured and reprocessed Cartridges meet Xerox's new Cartridge performance standards and contain new and/or reprocessed components. To enhance print quality, the Cartridge(s) for many models of Equipment have been designed to cease functioning at a predetermined point. In addition, many Equipment models are designed to function only with Cartridges that are newly manufactured original Xerox Cartridges or with Cartridges intended for use in the U.S. Equipment configuration that permits use of non-newly manufactured original Xerox Cartridges may be available from Xerox at an additional charge. Cartridges sold as Environmental Partnership ("EP") Cartridges remain the property of Xerox. You agree that you shall return all EP Cartridges and may return other Cartridges to Xerox, at Xerox's expense when using Xerox-supplied shipping labels, for remanufacturing once such Cartridges cease functioning.

14. EQUIPMENT STATUS. Unless you are acquiring Previously Installed Equipment, Equipment will be either (a) "Newly Manufactured", which may contain some recycled components that are reconditioned; (b) "Factory Produced New Model", which is manufactured and newly serialized at a Xerox factory, adds functions and features to a product previously disassembled to a Xerox predetermined standard, and contains both new components and recycled components that are reconditioned; or, (c) "Remanufactured", which has been factory produced following disassembly to a Xerox predetermined standard and contains both new components and recycled components that are reconditioned.

15. LEASE OPTIONS. The following options are available for Equipment subject to this Agreement.

A. PURCHASE OPTION. If not in default, you may purchase the Equipment, "AS IS, WHERE-IS" and WITHOUT ANY WARRANTY AS TO CONDITION OR VALUE: (i) at the end of the lease term for the Purchase Option indicated on the face of this Agreement (i.e. either a set dollar amount or the Fair Market Value of the Equipment at the lease term's conclusion ["FMV"]), plus all applicable Taxes, or (ii) any time during the lease term by paying: (1) all amounts then due; (2) the remaining Minimum Lease Payments in the Agreement's term less any unearned finance, maintenance, and supply charges (as reflected on the lessor's books and records); (3) a reasonable disengagement fee calculated by Xerox that will not exceed fifteen percent (15%) of the amount in (2) above (said amount is available from Xerox upon request); (4) the applicable Purchase Option; and (5) all applicable Taxes.

B. RENEWAL. Unless either party provides notice at least thirty (30) days before the end of the lease term of its intention not to renew this Agreement, it will be renewed automatically on a month-to-month basis at the same price, terms and conditions and billing frequency as the original Agreement. During this renewal period, either party may terminate this Agreement upon at least thirty (30) days notice.

C. LEASE TERMINATION. Upon termination pursuant to B. above, and if you have not purchased the Equipment, you shall make the Equipment available for removal by Xerox when requested to do so by Xerox and, at the time of removal, the Equipment shall be in the same condition as when delivered (reasonable wear and tear excepted), together with any related software.

16. PROTECTION OF XEROX'S RIGHTS. You hereby authorize Xerox or its agents to file, by any permissible means, financing statements necessary to protect Xerox's rights as the Equipment Lessor. Xerox, on your behalf and at your expense, may take any action required to be taken by you under this Agreement that you fail to take.

17. REPRESENTATIONS, WARRANTIES & COVENANTS. Each party represents that, as of the date of this Agreement, it has the lawful power and authority to enter into this Agreement, the individuals signing this Agreement are duly authorized to do so on its behalf and, by entering this Agreement, it will not violate any law or other agreement to which it is a party. You are not aware of anything that will have a material negative effect on your ability to satisfy your payment obligations under this Agreement and all financial information you have provided, or will provide, to Xerox is true and accurate and provides a good representation of your financial condition. Each party agrees that it will promptly notify the other party in writing of a change in ownership, if it relocates its principal place of business or changes the name of its business.

18. NOTICES. Notices must be in writing and will be deemed given five (5) days after mailing, or two (2) days after sending by nationally recognized overnight courier, to the other party's business address, or to such other address designated by either party to the other by written notice given pursuant to this sentence. The term "business address" shall mean, for you, the "Bill to" address listed on the first page of this Agreement and, for Xerox, our inquiry address set forth on the most recent invoice to you.

19. FORCE MAJEURE. Xerox shall not be liable to you during any period in which its performance is delayed or prevented, in whole or in part, by a circumstance beyond its reasonable control, which circumstances include, but are not limited to, the following: act of God (e.g., flood, earthquake, wind); fire; war;

Xerox Form# 51860t&c (05/2005)

act of a public enemy or terrorist; act of sabotage; strike or other labor dispute; riot; misadventure of the sea; inability to secure materials and / or transportation; or, a restriction imposed by legislation, an order or a rule or regulation of a governmental entity. If such a circumstance occurs, Xerox shall undertake reasonable action to notify you of the same.

20. MISCELLANEOUS. This Agreement constitutes the entire agreement as to its subject matter, supersedes all prior and contemporaneous oral and written agreements, and shall be construed under the laws of the State of New York (without regard to conflict-of-law principles). You agree to the jurisdiction and venue of the federal and state courts in Monroe County, New York. In any action to enforce this Agreement, the parties agree to waive their right to a jury trial. If a court finds any term of this Agreement to be unenforceable, the remaining terms of this Agreement shall remain in effect. Both parties may retain a reproduction (e.g., electronic image, photocopy, facsimile) of this Agreement which shall be admissible in any action to enforce it, but only the Agreement held by Xerox shall be considered an original. Xerox may accept this Agreement either by its authorized signature or by commencing performance (e.g., Equipment delivery, initiating Basic Services, etc.). All changes to this Agreement must be made in a writing signed by both parties; accordingly, any terms on your ordering documents shall be of no force or effect. The following four sentences control over every other part of this Agreement and over all other documents now or later pertaining to this Agreement. We both intend to comply with applicable laws. In no event will Xerox charge or collect any amounts in excess of those allowed by applicable law. Any part of this Agreement that would, but for this Section, be read under any circumstances to allow for a charge higher than that allowed under any applicable legal limit, is limited and modified by this Section to limit the amounts chargeable under this Agreement to the maximum amount allowed under the legal limit. If, in any circumstances, any amount in excess of that allowed by law is charged or received, any such charge will be deemed limited by the amount legally allowed and any amount received by Xerox in excess of that legally allowed will be applied by us to the payment of amounts legally owed under this Agreement, or refunded to you.

SOFTWARE TERMS: The following additional terms apply only to transactions covering Application Software and/or Xerox-brand Equipment:

21. SOFTWARE LICENSE. The following terms apply to copyrighted software and the accompanying documentation, including, but not limited to, operating system software, provided with or within the Xerox-brand Equipment acquired hereunder ("Base Software") as well as software specifically set out as "Application Software" on the face of this Agreement. This license does not apply to any Diagnostic Software or to any software / documentation accompanied by a clickwrap or shrinkwrap license agreement or otherwise made subject to a separate license agreement.

A. Xerox grants you a non-exclusive, non-transferable license to use the Base Software within the United States, its territories, and possessions (the "United States") only on or with the Equipment with which (or within which) it was delivered. For Application Software, Xerox grants you a non-exclusive, non-transferable license to use this software within the United States on any single unit of equipment for as long as you are current in the payment of any indicated software license fees (including any Annual Renewal Fees). You have no other rights to the Base or Application Software and, in particular, may not: (1) distribute, copy, modify, create derivatives of, decompile, or reverse engineer this software; (2) activate any software delivered with or within the Equipment in an unactivated state; or, (3) allow others to engage in same. Title to the Base and Application Software and all copyrights and other intellectual property rights in it shall at all times reside solely with Xerox and/or its licensors (who shall be considered third-party beneficiaries of this Agreement's software and limitation of liability provisions). Base and Application Software may contain, or be modified to contain, computer code capable of automatically disabling proper operation or functioning of the Equipment. Such disabling code may be activated if: (a) Xerox is denied reasonable access to the Base or Application Software to periodically reset such code; (b) you are notified of a default under any term of this Agreement; or, (c) your license is terminated or expires.

B. Xerox may terminate your license for any Base Software (1) immediately if you no longer use or possess the Equipment or are a lessor of the Equipment and your first lessee no longer uses or possesses it, or (2) upon the termination of any agreement under which you have rented or leased the Equipment.

C. If you transfer possession of the Equipment after you obtain title to it, Xerox will offer the transferee a license to use the Base Software within the United States on or with it, subject to Xerox's then-applicable terms and license fees, if any, and provided the transfer is not in violation of Xerox's rights.

D. Xerox warrants that the Base and Application Software will perform in material conformity with its user documentation for a ninety (90) day period from

Xerox Form# 51860t&c (05/2005)

the date it is delivered or, for software installed by Xerox, the date of software installation. Neither Xerox nor its licensors warrant that the Base or Application Software will be free from errors or that its operation will be uninterrupted.

22. SOFTWARE SUPPORT. During the period that Xerox (or a designated servicer) provides Basic Services for the Equipment but in no event longer than five (5) years after Xerox stops taking orders from customers for their acquisition of the subject model of Equipment, Xerox (or a designated servicer) will also provide software support for the Base Software under the following terms. For Application Software licensed pursuant to this Agreement, Xerox will provide software support under the following terms provided you are current in the payment of all Initial License and Annual Renewal Fees (or, for programs not requiring Annual Renewal Fees, the payment of the Initial License Fee and the annual "Support Only" Fees).

A. Xerox will assure that Base and Application Software performs in material conformity with its user documentation and will maintain a toll-free hotline during standard business hours to answer related questions.

B. Xerox may make available new releases of the Base or Application Software that primarily incorporate coding error fixes and are designated as "Maintenance Releases". Maintenance Releases are provided at no charge and must be implemented within six (6) months after being made available to you. Each new Maintenance Release shall be considered Base or Application Software governed by these Software Terms. New releases of the Base or Application Software that are not Maintenance Releases, if any, may be subject to additional license fees at Xerox's then-current pricing and shall be considered Base or Application Software governed by these Software Terms (unless otherwise noted). Xerox will not be in breach of its software support obligations hereunder if, in order to implement, in whole or in part, a new release of Base or Application Software provided or made available to you by Xerox, you must procure, at your expense, additional hardware and/or software from Xerox or any other entity. You agree to return or destroy all prior releases.

C. Xerox will use reasonable efforts, either directly and/or with its vendors, to resolve coding errors or provide workarounds or patches, provided you report problems as specified by Xerox.

D. Xerox shall not be obligated (1) to support any Base or Application Software that is two or more releases older than Xerox's most current release or (2) to remedy coding errors if you have modified the Base or Application Software.

E. For Application Software, Xerox may annually increase the Annual Renewal and Support-Only Fees, each such increase not to exceed 10%. (For state and local-government customers, this adjustment shall take place at the commencement of each of your annual contract cycles.)

23. DIAGNOSTIC SOFTWARE. Software used to maintain the Equipment and/or diagnose its failures or substandard performance (collectively "Diagnostic Software") is embedded in, resides on, or may be loaded onto the Equipment. The Diagnostic Software and method of entry or access to it constitute valuable trade secrets of Xerox. Title to the Diagnostic Software shall at all times remain solely with Xerox and/or Xerox's licensors. You agree that (a) your acquisition of the Equipment does not grant you a license or right to use the Diagnostic Software in any manner, and (b) that unless separately licensed by Xerox to do so, you will not use, reproduce, distribute, or disclose the Diagnostic Software for any purpose (or allow third parties to do so). You agree at all times (including subsequent to the expiration of this Agreement) to allow Xerox to access, monitor, and otherwise take steps to prevent unauthorized use or reproduction of the Diagnostic Software.

GOVERNMENT CUSTOMER TERMS: The following additional terms apply only to lease transactions with state and local government customers:

24. REPRESENTATIONS & WARRANTIES, FUNDING, TAX TREATMENT & PAYMENT.

A. REPRESENTATIONS & WARRANTIES. You hereby represent and warrant, as of the date of this Agreement, that: (1) you are a State or a fully constituted political subdivision or agency of the State in which you are located and are authorized to enter into, and carry out, your obligations under this Agreement and any other documents required to be delivered in connection with the Agreement (collectively, the "Documents"); (2) the Documents have been duly authorized, executed and delivered by you in accordance with all applicable laws, rules, ordinances and regulations (including, but not limited to, all applicable laws governing open meetings, public bidding and appropriations required in connection with this Agreement and the acquisition of the Equipment) and are valid, legal, binding agreements, enforceable in accordance with their terms and the person(s) signing the Documents have the authority to do so, are acting with the full authorization of your governing body and hold the offices indicated below their signatures, each of which are genuine; (3) the Equipment is essential to the immediate performance of a governmental or proprietary function by you within

Page ___ of ___

the scope of your authority and shall be used during the lease term only by you and only to perform such function; and, (4) your obligations to remit payments under this Agreement constitute a current expense and not a debt under applicable state law and no provision of this Agreement constitutes a pledge of your tax or general revenues and any provision that is so construed by a court of competent jurisdiction is void from the inception of this Agreement.

B. FUNDING. You represent and warrant that all payments due and to become due during your current fiscal year are within the fiscal budget of such year and are included within an unrestricted and unencumbered appropriation currently available for the lease/purchase of the Equipment, and that it is your intent to use the Equipment for the entire lease term and to make all payments required under this Agreement. In the event that (1) through no action initiated by you your legislative body does not appropriate funds for the continuation of this Agreement for any fiscal year after the first fiscal year and has no funds to do so from other sources, and (2) you have made a reasonable but unsuccessful effort to find a creditworthy assignee acceptable to Xerox in its sole discretion within your general organization who can continue this Agreement, this Agreement may be terminated. To effect this termination, you shall, thirty (30) days prior to the beginning of the fiscal year for which your legislative body does not appropriate funds for such upcoming fiscal year, send Xerox written notice stating that your legislative body failed to appropriate funds and that you have made the required effort to find an assignee. Your notice must be accompanied by payment of all sums then owed through the current year to Xerox under this Agreement and must certify that the canceled Equipment is not being replaced by equipment performing similar functions during the ensuing fiscal year. In addition, you agree at your expense to return the Equipment in good condition to a location designated by Xerox and that, when returned, the Equipment will be free of all liens and encumbrances. You will then be released from your obligations to make any further payments to Xerox beyond those due for the current fiscal year (with Xerox retaining all sums paid to date).

C. TAX TREATMENT. This Agreement has been accepted on the basis of your representation that Xerox may claim any interest paid by you as exempt from federal income tax under Section 103(c) of the Code. You agree to comply with the information reporting requirements of Section 149(e) of the Code. Such compliance shall include, but not be limited to, the execution of 8038-G or 8038-GC Information Returns. You hereby appoint Xerox as your agent to maintain, and Xerox agrees to maintain, or cause to be maintained, a complete and accurate record of all assignments of this Agreement in form sufficient to comply with the book entry requirements of Section 149(a) of the Code and the regulations prescribed thereunder from time to time. Should Xerox lose the benefit of this exemption as a result of your failure to comply with or be covered by Section 103(c) or its regulations, then, subject to the availability of funds and upon demand by Xerox, you shall pay Xerox an amount equal to its loss in this regard. At the time of execution of this Agreement, you shall provide Xerox with a properly prepared and executed copy of US Treasury Form 8038 or 8038-GC.

D. PAYMENT. Your payment is due within thirty (30) days of our invoice date.

ADDITIONAL TERMS: The following additional terms apply only to the extent that you have agreed to one or more of the options described below:

25. CONSUMABLE SUPPLIES INCLUDED IN BASE/PRINT CHARGES. If this option has been selected, Xerox (or a designated servicer) will provide you with black toner (excluding highlight color toner), black developer, copy Cartridges, and, if applicable, fuser ("Consumable Supplies") throughout the term of this Agreement. For full-color Equipment, Consumable Supplies shall also include, as applicable, color toner and developer. You agree that the Consumable Supplies are Xerox's property until used by you, that you will use them only with the Equipment, that you will return all Cartridges to Xerox for remanufacturing once they have been run to their cease-function point (at Xerox's expense when using Xerox-supplied shipping labels), and that at the end of the term of this Agreement either (a) you will return any unused Consumable Supplies to Xerox (at Xerox's expense when using Xerox-supplied shipping labels)or (b) destroy them in a manner permitted by applicable law. Should your use of Consumable Supplies exceed Xerox's published yields for these items by more than 10%, you agree that Xerox shall have the right to charge you for any such excess usage. When requested by Xerox, you agree to provide meter readings and inventory of Consumable Supplies in your possession.

26. REPLACEMENT / MODIFICATION OF PRIOR XEROX AGREEMENT. If this option has been selected, this Agreement will replace or modify a prior agreement between you and Xerox covering the specified equipment. If it is a replacement agreement, the prior agreement shall be null and void. If it is a modification, the prior agreement shall remain in effect except that any terms presented in this modification agreement that conflict with, or are additive to, any of the terms in the prior agreement shall take precedence over the terms in the prior agreement for the balance of the Agreement. In addition, modifications requiring a reamortization of your payments may include a one-time administrative/processing charge that will appear on your first bill under this revised arrangement.

27. XEROX AS FINANCIAL INTERMEDIARY. If this option has been selected, you are leasing specifically identified products that were selected by you and that are not sold by Xerox in the normal course of its business. If you have signed a purchase contract for such products, by signing this Agreement you assign your rights but none of your obligations under such purchase contract to Xerox. With regard to these products, you agree that Xerox is leasing them to you "AS IS, WHERE IS" and that XEROX HAS NOT MADE, AND YOU HEREBY WAIVE, ANY EXPRESS OR IMPLIED REPRESENTATIONS OR WARRANTIES WHATSOEVER, INCLUDING, WITHOUT LIMITATION, (a) ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE OR NON-INFRINGEMENT, and (b) ANY REPRESENTATION OR WARRANTY REGARDING THE PRODUCTS' SUITABILITY, DESIGN, CONDITION, DURABILITY, OPERATION, QUALITY OF MATERIALS OR WORKMANSHIP, OR COMPLIANCE WITH SPECIFICATIONS OR APPLICABLE LAW. Xerox assigns to you, to the extent assignable, any warranty rights it has to these products (which rights shall revert to Xerox if you breach this Agreement). You agree (1) that these products are not covered by Xerox's obligation to provide Basic Services; (2) to maintain a service agreement for these products with a service provider acceptable to Xerox throughout this Agreement's term; (3) to pay all personal property taxes related to these products; and (4) to assign to Xerox any rights you have to these products until title passes from Xerox to you (which, subject to any software licenses surrounding the acquisition of these products, shall occur when you obtain title to all Xerox-brand Equipment covered by this Agreement).

28. FINANCED SOFTWARE TOTAL. If this option has been selected, the initial license fees for any Application Software set forth in this Agreement shall be paid for through your Minimum Lease Payments. If you breach this license or any of your obligations regarding the Equipment, the full amount of the initial license fees shall be immediately due and payable.

29. FINANCED SUPPLIES TOTAL. If this option has been selected, the cost of any supplies you have purchased under this Agreement shall be paid for through your Minimum Lease Payments. If you breach any of your obligations regarding the Equipment, the full amount of the supply costs shall become immediately due and payable.

30. REFINANCE OF PRIOR AGREEMENT. If this option has been selected, the balance of your prior indicated agreement with Xerox or a third party shall be paid for through your Minimum Lease Payments. If your prior agreement is with a third party, you hereby acknowledge that you have the right to terminate the agreement and agree to provide a statement from the third-party identifying the equipment at issue and the amount to be paid off (as well as a statement from you identifying the payee and mailing address for your payoff check). If your prior agreement was with Xerox, the use of this refinance option shall render your prior agreement null and void. If you breach this Agreement, the full amount of your prior agreement balance shall be immediately due and payable.

31. ADJUSTMENT PERIOD. If this option has been selected, your Minimum Lease Payment and/or Print Charges shall be adjusted in accordance with the information contained in the Adjustment Period portion of this Agreement; as a result, your initial payment(s) shall be different from those payable during the balance of this Agreement.

32. K-16 BILLING SUSPENSION. If this option has been selected, the Maintenance Component of your Minimum Lease Payment and Print Charges will be suspended each year during the months indicated. During these months, you agree that you will not use the Equipment and that Xerox shall not be responsible for providing Basic Services on it. If Xerox provides Basic Services during the K-16 Billing Suspension period, you will be billed at Xerox's then-current Time and Materials ("T&M") rates for such Basic Services.

33. TRADE-IN EQUIPMENT. If this option has been selected, you are providing equipment to Xerox as part of this Agreement ("Trade-In Equipment") and the following shall apply:

A. TITLE TRANSFER. You warrant that you have the right to transfer title to the Trade-In Equipment and that it has been installed and performing its intended function. Title and risk of loss to the Trade-In Equipment shall pass to Xerox when Xerox removes it from your premises.

B. CONDITION. You warrant that the Trade-In Equipment is in good working order, has not been modified from its original configuration (other than by Xerox), and has a UL label attached. You agree to maintain the Trade-In Equipment at its present site and in substantially its present condition until removed by Xerox.

Xerox Form# 51860t&c (05/2005)

Page ___ of ___

C. ACCRUED CHARGES. You agree to pay all accrued charges for the Trade-In Equipment (up to and including payment of the Final Principal Payment Number) and to pay all maintenance, administrative, supply and finance charges for this equipment through the date title passes to Xerox.

34. RUN LENGTH PLAN. If this option has been selected, the first ten prints of each original (per run) are recorded and billed on both meters with all subsequent prints recorded and billed on Meter A only.

35. FIXED PRICE PLAN. If this option has been selected, Xerox will forego its right to increase the Maintenance Component throughout the initial term of this Agreement.

36. PER-FOOT PRICING. If this option has been selected, all Print Charges will be billed on a per-foot basis, with each linear or square foot, as applicable, equal to one print.

37. EXTENDED SERVICE HOURS. If this option has been selected, Xerox will provide Basic Services during the hours indicated, with the first number establishing the number of eight-hour shifts covered and the second establishing the days of the week (e.g., 2 x 6 would provide service from 8:00 A.M. to 11:59 P.M., Monday through Saturday). The cost of this enhanced service coverage will be billed separately and, as such, is not included in your Minimum Lease Payment or Print Charges.

38. ATTACHED ADDENDA. If this option has been selected, you acknowledge that one or more specified addenda (as indicated) have been provided to you. These addenda, which provide additional terms relevant to the transactions covered hereunder, are hereby fully integrated into this Agreement.

39. NEGOTIATED CONTRACT. If this option has been selected, the Products identified in this Agreement are subject solely to the terms contained in (a) either (1) the identified Negotiated Contract for a lease transaction or (2) if there are no such terms in the Negotiated Contract, the terms set forth in this Agreement, and, if applicable and notwithstanding anything to the contrary set forth in the Negotiated Contract, (b) the "Additional Terms" portion of this Agreement for the selected option or options to the extent the subject matter of any such selected option is not addressed in the Negotiated Contract.

40. DSA CONTRACT NUMBER. If a DSA Contract Number has been inserted, the Equipment and/or software identified in this Agreement are associated with the Services being provided under the referenced Document Services Agreement ("DSA"), but such Equipment and/or software are subject solely to the terms contained in this Agreement.

**For customer support tools to manage your account online, visit your Account Management link @ www.xerox.com**