# AFFIDAVIT OF CHARLES CORRIGAN

I, Charles Corrigan, declare as follows:

1. I am Charles Corrigan, Litigation Specialist in the Recovery Operations department for Xerox Capital Services, LLC, the authorized servicing agent of Xerox Corporation ("Xerox"). My office address is 1303 Ridgeview Drive, Lewisville, Texas. As a Litigation Specialist in the Recovery Operations department for Xerox, I am responsible for enforcement of the rights of Xerox arising from its business transactions with the Otoe-Missouria Tribe of Indians (the "Tribe"), which does business in Oklahoma as the 7 Clans Paradise Casino.

2. I, with other employees in my department, have custody and control of the business records of Xerox as they pertain to this case. I am required to know and, in fact, am familiar with the jobs of Xerox's employees and the recordkeeping methods used by those employees who, in addition to myself, are responsible for making bookkeeping entries in Xerox's business records as they relate to this case.

3. The business records of Xerox referred to in this affidavit are prepared and kept by Xerox in the ordinary course of Xerox's business. The entries made in the records were made at or near the time of the occurrence of the events recorded. These records are in all instances kept in a safe and secure location. Persons who have a business duty to Xerox to make such records made all of these business records.

4. I have been employed as a Litigation Specialist by Xerox and Xerox Capital Services, LLC in the Recovery Operations department for many years. Based on my status as a Litigation Specialist, I have personal knowledge that Xerox is a New York corporation currently in good standing under the laws of the state of New York and that Xerox is authorized to do business in the state of Oklahoma. In my capacity as a Litigation Specialist, I am exposed to



EXHIBIT 3

information concerning the corporate status and standing of Xerox. Accordingly, I am in a position to be aware of the current name of Xerox, its state of incorporation, and its corporate status. I am further aware of the history set forth based upon my personal knowledge, including participation directly in the business affairs of Xerox.

5. I am aware of all of the business records, forms, customs, practices and procedures of Xerox, including the preparation of accounting and ledger records, as the records pertain to recovery upon delinquent accounts. I am aware of the meaning, use, purpose and interpretation of the records, customs, practices, including accounting and ledger records, pertaining to accounts in default. I thus can state how Xerox's business records, including accounting and ledger records are kept, prepared, maintained and where the sources of information found therein come from as well as how the records are prepared.

6. I am presently charged with the responsibility of collection of the delinquent accounts of the Tribe. My responsibilities include all tasks which pertain to recovery of the indebtedness owed by the Tribe, including analysis of all pertinent contract documentation and accounting information. Once the Tribe's account became delinquent, it was referred to me. Since that time, all of the business records and files pertaining to the Tribe's accounts were delivered into my possession. Further, all computer-maintained account records were made available to me. The statements contained herein, therefore, are based upon my personal knowledge and upon my status as a custodian of the Tribe's account. If called as a witness, I could and would testify competently thereto.

### THE LEASE TRANSACTIONS BETWEEN XEROX AND THE TRIBE

7. The Tribe entered into two lease agreements with Xerox for photocopying equipment (the "Lease Agreements") for use in the Tribe's gambling casino business:

2

a. February 12, 2004 Lease for a DC425ASC Copier, serial number EYF013158, (the "DC4 Lease"), for a five year term ending March 30, 2009, requiring monthly payments of a $245.00 base charge plus applicable taxes as well as meter usage charges. (Ex. 1)

b. June 30, 2006 Lease for two WCP265HC Copiers (the "WCP Lease"), for a five-year term ending July 30, 2011, requiring monthly payments of a $1,846.87 base charge plus applicable taxes as well as meter usage charges. (Ex. 2)

8. Xerox has performed all the conditions, covenants, and agreements on its part to be performed in accordance with the Lease Agreements.

## BREACH OF THE LEASE BY THE TRIBE

9. The Tribe defaulted in its payments under the Lease Agreements by failing to pay the monthly lease payments then due, and by failing to pay any sum or sums thereafter. Although demand was made that the Tribe pay the unpaid lease installments, the Tribe has failed and refused to do so.

10. Xerox maintains detailed records of all financial transactions affecting the account between Xerox and the Tribe evidenced by the Lease Agreements. Under my supervision and control, Xerox follows the practice of maintaining entries for all credits, debits and other transactions affecting the Tribe's lease accounts. All such records are maintained in the ordinary course of Xerox's business.

## ACCELERATION OF THE LEASES

11. The Tribe caused an event of default under the Lease Agreements in that the Tribe has refused to make required payments pursuant to the terms of the Lease Agreements.

3

12. The occurrence of one or more events of default triggers the default provision of the Lease Agreements including the acceleration of the Tribe's obligations under the Lease Agreements.

13. As of the date of filing of this Petition, after credit for payments and other offsets, the principal accelerated balance due under the Lease Agreement is:

    a. February 12, 2004 DC4 Lease: $5,557.66

    b. June 30, 2006 WCP Lease: $94,172.90

    **TOTAL: $99,730.56**

14. In addition to the principal accelerated balance referenced above, the Lease Agreements include an interest charge, calculated from the date of contractual default and acceleration at a rate of 1.5% per month. Total contractual interest for the principal accelerated balance through January 31, 2008, is $2,094.12.

I declare under penalty of perjury under the laws of the State of Texas that the foregoing is true and correct by information and belief.

Executed this 24th day of January, 2008, at Denton County, Texas.

_____
CHARLES CORRIGAN

Subscribed and sworn to before me this 24th day of January 2008.


ANITA LOUISE McGOVERN
MY COMMISSION EXPIRES
May 26, 2010

_____
Notary Public

My Commission Expires:      My Commission Number:

May 26, 2010